IRVING, P.J.,
for the Court:
¶ 1. On September 12, 2007, agents of the Mississippi Gaming Commission (MGC) raided Paradise Isle Internet Café in West Point, Mississippi. The agents seized thirty-nine computer terminals, a computer server, and a point-of-sale system, which they believed were illegal gambling devices.
¶ 2. The State filed criminal charges against Ronnie Moore and Jeff Moore in the Clay County Justice Court for their involvement with the internet café. On October 16, 2007, the State requested that the charges against the Moores be dismissed without prejudice until its cyber-crime unit could analyze the machines. On October 18, 2007, the justice court heard arguments regarding whether the seized equipment should be returned to the Moores following the State’s dismissal of the criminal charges. The State requested three weeks to analyze the machines, and the justice court ordered the State to either file charges against the Moores by November 8, 2007, or return the machines. The State appealed the justice court order to the Clay County Circuit Court, arguing that the justice court lacked jurisdiction to order the return of the machines. Following a non-jury trial, the circuit court found that the Moores had no property right in the machines because they were illegal slot machines.
¶ 8. Feeling aggrieved, the Moores appeal and raise four issues, which we have *539 consolidated into two: whether the circuit court erred in finding that the machines were illegal slot machines and that the justice court did not have jurisdiction over the seized machines.
¶ 4. Finding no reversible error, we affirm.
FACTS
¶ 5. The Moores owned and operated the Paradise Isle Internet Café, which provided internet access at an hourly rate and sold long-distance telephone cards. Telephone cards could be purchased using a point-of-sale register operated by an internet-café employee for a minimum of one dollar. Customers who wished to purchase more than five dollars worth of phone time were instructed to complete their purchase at one of the internet cafe’s computer terminals. For each dollar spent, customers received 100 “sweepstakes points.” No purchase was required to participate in the sweepstakes, and customers could request a free entry form from an internet-cafe employee.
¶ 6. Customers could redeem sweepstakes points by mailing in a free entry form, using the “quick redeem” feature, or using one of the internet cafe’s computer terminals. The “quick redeem” option allowed customers to redeem their sweepstakes points at the point-of-sale register. A customer using a computer terminal to redeem his sweepstakes points would swipe his phone card, which has a magnetic strip, through a card reader at the computer terminal. Sweepstakes points would be displayed on the computer screen, and the customer would be given the option of playing a variety of sweepstakes games. The games simulated those traditionally played on slot machines. As a customer played a game, points would be accumulated and displayed in a separate “win account.” Points won could not be used for additional play. Instead, when a customer had played all of his sweepstakes points, he would be given the option of using the points from the “win account” to buy additional phone time, which included additional sweepstakes points, or redeem his points for cash. The Moores contend that playing the games had no impact on sweepstakes winnings; instead, winnings were pre-determined upon activation of the telephone card.
¶7. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶8. “The findings of a circuit court judge sitting without a jury ‘will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence.’ ” City of Jackson v. Spann, 4 So.3d 1029, 1032 (¶9) (Miss.2009) (quoting Donaldson v. Covington County, 846 So.2d 219, 222 (¶ 11) (Miss.2003)).

1. Legality of Seized Machines

¶ 9. The Moores argue that the circuit court erred in finding that the seized machines were illegal slot machines because the elements of consideration and chance were not present. Mississippi’s Gaming Control Act defines a slot machine as:
any mechanical, electrical or other device, contrivance or machine which, upon insertion of a coin, token or similar object, or upon payment of any consideration, is available to play or operate, the play or operation of which, whether by reason of the skill of the operator or application of the element of chance, or both, may deliver or entitle the person playing or operating the machine to receive cash, premiums, merchandise, tokens or anything of value, whether the *540 payoff is made automatically from the machine or in any other manner.
Miss.Code Ann. § 75-76-5(ff) (Rev.2002). Relying on the above definition, the Mississippi Supreme Court has held that a gambling device is a slot machine if:
1. Its play or operation requires the insertion of money, tokens or similar objects, or payment of consideration; and
2. As a result of playing or operating the device, the player or operator has the potential to win a reward in the form of cash, premiums, merchandise, token, or anything of value; and
3. The winning of some part or all of the potential reward is dependent in substantial part on an element of chance.
Miss. Gaming Comm’n v. Henson, 800 So.2d 110, 113 (¶ 10) (Miss.2001).
¶ 10. The Moores argue that Mississippi Gaming Commission v. Treasured Arts, Inc., 699 So.2d 936 (Miss.1997) is analogous to their case. In Treasured Arts, our supreme court considered whether a “scratch-and-win” game piece that accompanied a long-distance telephone card constituted a lottery. Id. at 938 (¶ 9). The supreme court found that the consideration was paid for the telephone card itself, not the attached game piece. Id. at 940 (¶ 20). Because no additional consideration was paid for the opportunity to win a prize, the element of consideration was not present, and the game piece did not constitute a lottery. Id. at 940 (¶ 22).
¶ 11. We find that Treasured Arts is inapplicable. As stated, in Treasured Arts, the issue was whether the game pieces attached to the telephone cards violated the lottery statutes. Id. at 939 (¶ 15). Here, we are concerned with whether the equipment seized from the internet café is a slot machine. As such, we find that Mississippi Gaming Commission v. Six Electronic Video Gambling Devices, 792 So.2d 321 (Miss.Ct.App.2001) is controlling. In Six Electronic, this Court considered whether a “Lucky Shamrock” vending machine that dispensed telephone cards constituted an illegal slot machine. Id. at 327 (¶ 22). The Lucky Shamrock operated as follows:
For one dollar, the Lucky Shamrock dispense[d] a two[-]minute emergency long[-]distance calling card, good only for one call no matter the time actually used. With each card, the purchaser also receive[d] a game piece. This ha[d] a bar code on the back which [was] read by the machine as the card [was] being dispensed. The display on the machine then simulate[d] a slot machine by spinning nine squares. After a few moments the display show[ed] the same combination of squares as on the game piece. Again simulating a slot machine, the machine light[ed] up and playfed] music if the patron [was] a winner. A cashier at the store verifie[d] the winning card. This clerk then [paid] the prize money[, which could] be in the amount of one dollar up to five hundred dollars.
Id. at 323 (¶ 3).
¶ 12. The Six Electronic court found that the Lucky Shamrock was an illegal slot machine, and we see no reason to hold differently here. Id. at 327 (¶ 22). While the gambling devices seized from the internet café were computer terminals and not vending machines, they operated in a nearly identical fashion. Internet-café customers would purchase a telephone calling card, swipe the card through a card reader attached to the computer terminal, and “play” sweepstakes points by selecting various video games that simulated slot machines. Customers could use points *541 won to purchase more phone time or redeem points for cash.
¶ 13. Other jurisdictions have also held that internet cafés offering sweepstakes schemes violated gambling laws. See Barber v. Jefferson County Racing Assoc., Inc., 960 So.2d 599 (Ala.2006). Barber involved an internet café that sold internet access or “cybertime.” Id. at 604. Customers who purchased cybertime were given a plastic access card with an assigned account number. Id. at 605. For every dollar of cybertime purchased, the customer received 100 sweepstakes entries. Id. Customers would swipe their access cards through an electronic reader, which revealed whether they had won or lost. Id. at 608. The electronic readers allowed customers to reveal their sweepstakes entries by playing “casino-style” games. Id. at 606.
¶ 14. The owners of the internet café in Barber argued, like the Moores do here, that the elements of consideration and chance were missing from the sweepstakes. Id. at 609-10. The owners argued that consideration was paid for cybertime and that no additional consideration was paid to participate in the sweepstakes. Id. at 610. However, the Barber court noted that few customers used the internet kiosks while customers “were lined up at all hours to use the readers.” Id. at 611. Additionally, customers “purchased additional cybertime-with the accompanying entries-even though they already had large quantities of unused cybertime.” Id. The court concluded that if customers were “paying to play the readers, rather than to acquire, or in addition to acquiring, cyber-time, the element of consideration ... [was] satisfied.” Id.
¶ 15. At the Moore’s internet café, there were thirty-nine computer terminals equipped with card readers, but only a single computer was devoted to internet access. Additionally, Agent E.W. Williams, an MGC agent who participated in the undercover investigation of the internet café which led to the charges against the Moores, testified that the employee who sold him a telephone card did not explain how to use the card or tell him how many minutes were on the card. In fact, Agent Williams testified that he did not know that the access card that he received was also a telephone card.
¶ 16. Like the customers in Barber, it is clear that the customers of the Moores’ internet café were purchasing prepaid telephone cards to play the computer terminals rather than to make telephone calls. As such, we find that the element of consideration is satisfied. This issue is without merit.
¶ 17. The Moores also argue that the element of chance is not present because the outcome of each sweepstakes entry was determined before the customer purchased the telephone card. However, in Six Electronic, this Court explained that the element of chance is considered from the player’s point of view; “[w]hat the machine ‘knows’ does not affect the player’s gamble.” Six Electronic, 792 So.2d at 326 (¶ 15). Additionally, the Barber court concluded that even though the outcome of the sweepstakes entries was predetermined and not impacted by playing games on the electronic readers, the element of chance existed at the point of sale. Barber, 960 So.2d at 609. We see no reason to find differently here. While playing the games at the computer terminals did not impact the outcome of the sweepstakes points, an element of chance still existed because a consumer who purchased a telephone card did not know whether the card contained a winning or losing sweepstakes points. This issue is without merit.

*542
2. Jurisdiction Over Seized Machines

¶ 18. The Moores contend that the justice court retained jurisdiction over the seized machines; therefore, it was the proper court to order their return. This issue is now moot given our finding that the seized machines were illegal slot machines. Mississippi Code Annotated section 97-33-7(2) (Rev.2006) states:
No property right shall exist in any person, natural or artificial, or be vested in such person, in [slot machines]; and all such devices are hereby declared to be at all times subject to confiscation and destruction, and their possession shall be unlawful, except when in the possession of officers carrying out the provisions of this section. It shall be the duty of all law-enforcing officers to seize and immediately destroy all such machines and devices.
Because the computers and other equipment seized from the Moores constitute illegal slot machines, the Moores have no property rights to assert. Consequently, there was no legal basis for the justice court’s November 1, 2007, order. This issue is without merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR. MAXWELL, J., NOT PARTICIPATING.